IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID MARDIS,  
    Plaintiff,  
    v.     :  Civil Action No. 05-218J  
JEFFREY BEARD, SECRETARY,  
PENNSYLVANIA DEPARTMENT OF  
CORRECTIONS, and SUSAN DARR,  
MAIL ROOM INSPECTOR, S.C.I.  
SOMERSET,  
    Defendants

### Report and Recommendation

### Recommendation

Pending is defendants' motion to dismiss, docket no. 8. The motion is insufficient. However, I have an independent duty under 28 U.S.C.§ 1915A to screen and dismiss meritless claims and claims that seek damages against persons who are immune. 28 U.S.C.§ 1915(e). Having screened the complaint, I recommend the complaint be dismissed.

### Report

Plaintiff is serving an 8-30 year sentence imposed by the Court of Common Pleas of Indiana, and is incarcerated at S.C.I. Somerset. His complaint alleges that in late 2002, he spent $11 to subscribe to a quarterly magazine titled "The Justice Xpress." After plaintiff received the first issue, he failed to receive subsequent issues. When plaintiff inquired about this problem at the mail room, he was told that maybe the problem was that his subscription had expired. Plaintiff contacted the magazine's publisher in mid-2004 about the failure to receive the Spring 2004 and Summer 2004 issues, and it transpired that the mail room at

S.C.I. Somerset had refused the issues because they were shipped bulk mail. The magazine's publisher sent (and plaintiff received) three issues in 2004. The magazine "Justice Xpress" ceased publication in 2004. Plaintiff filed a grievance on July 30, 2004, claiming that the mail room's failure to accept the two 2004 issues violated his First Amendment rights. Plaintiff pursued this grievance through the three levels of the Pennsylvania Department of Corrections' grievance system, and by November 2004 had been told at each level that the Pennsylvania Department of Corrections did not believe it was wrong to refuse the publications. Plaintiff then filed this complaint. Plaintiff claims that his First Amendment right was violated by the mail room's refusal of this publication, and that his rights under the Due Process Clause were violated by the mail room's failure to tell him about the refusal and the prison's reason for the refusal. He seeks declaratory, punitive, compensatory and injunctive relief.

The Pennsylvania Department of Corrections has a policy, DC-ADM 803, which states that inmates are not permitted to receive bulk (now, officially, Pre-sorted Standard) mail. See DC-ADM 803 §VI.E.9. There is no allegation or defense that the mail was refused for content: both parties appear to agree that the issue was strictly one of the postage rate at which the publication was shipped.

Defendants move to dismiss the complaint, docket no. 8, because plaintiff did not exhaust his administrative remedies, and as to defendant Beard in his personal capacity for lack of allegation of personal involvement.

Generally speaking, exhaustion of available administrative remedies is mandatory for an inmate to initiate a federal lawsuit, because the Prison Litigation Reform Act of 1996 amended 42 U.S.C. § 1997e(a) to state:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The determination whether a prisoner has exhausted administrative remedies is made by evaluating the adequacy of an inmate's attempts to comply with the prison's administrative regulations governing inmate grievances. Substantial compliance with existing remedies is sufficient. Nyhuis v. Reno, 204 F.3d 65, 77-78 (3d Cir.2000). Failure to exhaust administrative remedies, even useless ones, can constitute procedural default, and exhaustion is not a trial issue, rather it is a preliminary question of law to be determined by the court. See Spruill v. Gillis, 372 F.3d 218, 222 and 226 (3d Cir. 2004), citing Concepcion v. Morton, 306 F.3d 1347, 1352 (3d Cir.2002). Where the evidence permits only one conclusion as to the use of (or failure to use) the administrative grievance system it is appropriate to recommend judgment on the pleadings for lack of exhaustion.

Congress amended Section 1997e(a)

> to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might "filter out some frivolous claims." And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002). The Court of Appeals for the Third Circuit analyzed the amendment as having

> three interrelated objectives... (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.

Spruill v. Gillis, 372 F.3d at 230.

Defendants claim that plaintiff has procedurally defaulted any claim against the defendants in their individual capacities by failing to specify them in his grievances. The exhaustion requirement of the PLRA did not have the effect of making a state prison's grievance system into a federal judicial court, and to require on penalty of default the same specificity of issues, identity of parties, and requests for relief that a court of appeal would require of a district court pleading would effectively abolish any value of the Commonwealth's administrative process other than as a trap for inmate litigants.

4

Defendants do have a more meritorious exhaustion defense, though, in pointing out that plaintiff only grieved the refusal of the 2004 issues, and did not mention the 2003 issues. However, it is hardly reasonable to expect an inmate to grieve an alleged problem until he is aware of it, and plaintiff, perhaps misled by the mail room's statement which did not disclose that the publication had been received and refused, did not know the reason for the failure to receive the publications until long after any point to grieving the matter had ceased. It would be improper to require not just exhaustion of available remedies, but clairvoyance as well, from an inmate.

Looking for a moment at the merits of this case (in which plaintiff has authorized the deduction of $250.00 to recover part of an $11.00 subscription) plaintiff asserts that a Ninth Circuit case, Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir.2005), establishes that it is a violation of the First Amendment for a prison to refuse non-subscription publications simply because they were shipped bulk rate. Prison Legal News v. Lehman expanded on an earlier case, Prison Legal News v. Cook, 238 F.3d 1145 (9th Cir.2001), which held the First Amendment provides inmates a right to receive subscription bulk mail. Reviewing those cases, it appears that the Ninth Circuit was insufficiently deferential to the legitimate penological reasons why a prison which did not object to the content of a publication would nevertheless have an

5

interest in refusing to accept it as bulk mail. However, even if the Prison Legal News cases would hold that an inmate's First Amendment right conflict's with DC-ADM 803's requirement that an inmate pay first class rates for bulk mail, the individual defendants are entitled to the defense of qualified immunity. Qualified immunity protects government personnel from liability for civil damages so long as "[their] actions could reasonably have been thought consistent with the rights [they are] alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity protects all government officials except those who are "plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). That means that the law must be "clearly established" beforehand, not after the fact. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982.) Pennsylvania Department of Corrections personnel and the S.C.I. Somerset mail room are not, on pain of penalty, charged with the duty of amending DC-ADM 803 to keep up with Ninth Circuit jurisprudence. No cases in the Third Circuit put a reasonable official on notice that the First Amendment proscribes DC-ADM 803's restrictions on how permissible publications are mailed into an institution.

The defendants are therefore not liable for damages. As for the claim for injunctive relief, petitioner has no standing to seek injunctive relief unless it is "likely," see Adarand

6

Constructors, Inc. v. Pena, 515 U.S. 200, 212 (1995)(holding that standing existed because alleged that future injury was "likely" or "extremely likely") that he will again suffer from the same deprivation of his constitutional rights. The cessation of publication of The Justice Express in 2004 makes it impossible for the Pennsylvania Department of Corrections to deprive plaintiff of the receipt of that publication for any reason.

Finally, there is plaintiff's claim for declaratory relief. Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to cases or controversies. This requires the plaintiff to have standing, that is, to allege that he has suffered a legally cognizable injury, that the injury is fairly traceable to the defendant or defendants' conduct, and that the injury is likely to be redressed by the requested relief. Raines v. Byrd, 521 U.S. 811, 818-19 (1997). Plaintiff has clearly met the first two elements of standing, and defendants' assertion that a violation of the First Amendment is only a "strictly theoretical" injury deserves only scorn. The question at issue is whether the alleged injury will be "redressed by the requested relief." Id., quoting Allen v. Wright, 468 U.S. 737, 751 (1984); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). With damages and injunctive relief foreclosed, there remains only plaintiff's claim for a declaration that the Pennsylvania Department of Corrections' application of DC-ADM 803 to bulk

7

mailing of The Justice Express in 2003 and 2004 conflicted with the First Amendment. But an prayer for a declaratory judgment does not suffice to confer standing where the declaration provides no basis for relief. See <u>Steel Co. v. Citizens for Better Environment</u>, 523 U.S. 83, 104 n.5 and 106 (1998). The complaint should be dismissed.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: 12 September 2006

Keith A. Pesto,
United States Magistrate Judge

Notice to:

    David Mardis AJ-2739
    S.C.I. Somerset
    1600 Walters Mill Road
    Somerset, PA 15510

    Christian Bareford, Esquire
    5th Floor Manor Complex
    564 Forbes Avenue
    Pittsburgh, PA 15219